IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DOMA INSURANCE AGENCY OF TEXAS, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO: 4:23-cv-126 |
| JOHN "HANK" GOODMAN and CYNTHIA GOODMAN | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff Doma Insurance Agency of Texas, Inc. f/k/a North American Title Company ("Doma") files this Plaintiff's Original Complaint against John "Hank" Goodman and Cynthia Goodman (collectively, the "Goodmans").

**Parties**

1.  Doma is a corporation organized under the laws of the State of Texas. Its principal place of business is in Texas. Doma is therefore a citizen of Texas.

2.  The Goodmans are residents of Kansas. They are therefore citizens of Kansas. They may be served at their residence at 11421 W 68th Street, Shawnee, Kansas 66203-3715.

1

## Jurisdiction and Venue

3. Jurisdiction is proper under 28 U.S.C. § 1332, as complete diversity exists, and the amount in controversy exceeds $75,000.

4. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(2), as the property that is the subject of the litigation is situated in Texas, and all or a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas in Fort Worth.

## Facts

5. This lawsuit arises from the closing of a sale of the residential real property located at 5962 Mountain Home Lane, Fort Worth, Texas 76131-2077 ("Property"). The Property was previously owned by Gwen Goodman, the Goodmans' daughter, who passed away on November 22, 2020.

6. At the time that she passed away, Gwen Goodman had a home equity loan in the original principal amount of $87,346.00 that was originated on February 26, 2020 with NewRez LLC d/b/a NewRez Mortgage ("NewRez"). At the time that Gwen Goodman passed away, the loan was still owned by NewRez and was serviced by PHH Mortgage Services ("PHH").

7. Monthly mortgage statements were mailed by PHH to Gwen Goodman at the address for the Property at least a couple of weeks in advance of each payment due date, which was on the first of the month. On information and belief, in November of 2020 and December of 2020, PHH mailed a mortgage statement to Gwen Goodman at the address of

the Property. Each statement contained the loan account number, which ended in "5668," and a phone number for contacting PHH about the mortgage.

8. According to the servicer log, on December 7, 2020, Mr. Goodman called PHH to advise that his daughter passed away. The notes on the servicer log state as follows:

> kpfeiffer1  12/7/2020 10:07:29AM  1193847249
> Inbound Call - Other
> mr hank goodman (father) unauth adv ms gwen goodman is deceased cld reqst password reset email be sent to his email//adv not auth on acct needs to submit probate court ppwk for auth//he u/s

9. According to the servicer log, on January 13, 2021, Mr. Goodman again called PHH. The notes on the servicer log state as follows:

> dcrenshaw  1/13/2021 6:43:21PM  1237169272
> Inbound Call - Other
> Gwen Goodman is deceased. Her father John Goodman called in to ask what he needs to do to have access to the account. The home is for sale. I advised him to send in the death certificate and a legal document that states he is in control of the home. He does not have the death certificate yet but will call back when he gets it.

10. The fact that Mr. Goodman contacted PHH strongly suggests that he accessed the Property and found the monthly mortgage statements with the loan number and PHH's phone number. It is also significant to note that the servicer's log does not indicate that Mr. Goodman was told that the loan was paid in full and that no further action needed to be taken.

11. It appears that Mr. Goodman provided PHH with his home address when he called on December 7, 2020. The mortgage statement sent by PHH dated January 3, 2021 was addressed to Gwen Goodman at the Goodmans' home address in Kansas. That statement showed that no payment was due, that the "Outstanding Principal" was $81,387.91, and that the current escrow balance was $2,945.77. Consistent with all prior

mortgage statements, the January 3, 2021 mortgage statement contained the loan number, which ended in "5668."

12. Likewise, the mortgage statement dated February 3, 2021 was mailed to the Goodmans' address in Kansas. That statement showed that no payment was due, that the "Outstanding Principal" was $81,387.91, and that the current escrow balance was $393.17.

13. In the meantime, the Goodmans entered into a contract to sell the Property. The sale was to close at Doma. Prior to closing, a Commitment for Title Insurance ("Commitment") was issued. The Commitment showed that Gwen Goodman executed a home equity deed of trust dated February 26, 2020 that was recorded in the Tarrant County real property records to secure a loan in the original principal amount of $87,346.00. Commitments are usually distributed to both the buyer and seller.

14. Because the Commitment showed a lien on the Property, Doma needed payoff information for the loan such that a portion of the purchase money proceeds could be paid to NewRez to discharge the lien on the Property. To obtain a payoff statement, a title agency needs to provide a loan number to the lender.

15. On January 16, 2021, the Goodmans' realtor sent an email to Doma, apparently in response to a request for information about the home equity loan. He stated, "In regards to the payoff all they have is the email below and some miscellaneous docs found in the home. They do not have an account number." As stated herein, the January 3, 2021 monthly statement was mailed to the Goodmans at their home address in Kansas. The monthly statement contained the account number and stated that the outstanding principal balance due on the loan was $81,387.91.

16. In the present case, when Doma tried to order the payoff statement in January of 2021, PHH asked for Gwen Goodman's social security number. Doma asked the Goodmans' realtor to provide that information, which, on information and belief, was provided. Doma then requested a payoff statement on January 26, 2021 for a loan number ending in "7681."

17. At closing on February 19, 2021, Doma still had not received a payoff statement. The Settlement Statement signed by the parties at closing showed that $100,000.00 of the $217,000.00 sale price of the Property was going to be held in escrow to pay off Gwen Goodman's loan once a payoff statement was received. Also at closing, the Goodmans signed the Seller's/Borrower's Affidavit as to Debts and Liens. The Affidavit signed by the Goodmans contained the following provisions:

> The undersigned affiants, after being duly sworn hereby state under oath that the following information is true and correct:
>
> PURPOSE OF AFFIDAVIT: This affidavit is made to the title company, lender and other persons named above as an inducement to them to complete a transaction in connection with the above described property. The undersigned acknowledges that such title company, lender and other persons are relying upon the representations in this affidavit as being true and correct and that the transaction would not be consummated without this affidavit being executed. The undersigned represents that he or she is the person whose signature is affixed below and, if applicable, that he or she is duly authorized to execute this affidavit.
>
> DEBTS OR LIENS: Except as indicated below, there are no loans, tax liens, or other real estate liens on the above described real property. The exceptions are:
>
> Existing Creditor                                         Approximate amount
> PHH (servicer)                                                  $100,000.00
>
> …

> **INDEMNITY:** THE UNDERSIGNED AGREE TO PAY ON DEMAND TO THE PURCHASER, LENDER, OR TITLE COMPANY IN THIS TRANSACTION, THEIR SUCCESSORS AND ASSIGNS, ALL AMOUNT[S] SECURED BY ANY AND ALL LIENS SHOWN OR NOT SHOWN ABOVE, TOGETHER WITH ALL COSTS, LOSS AND ATTORNEY'S FEES THAT SAID PARTIES MAY INCUR IN CONNECTION WITH SUCH UNMENTIONED LIENS, PROVIDED SAID LIENS EITHER CURRENTLY APPLY TO SUCH PROPERTY, OR A PART HEREOF, OR ARE SUBSEQUENTLY ESTABLISHED AGAINST SAID PROPERTY AND ARE CREATED BY OR ARE KNOWN TO THE UNDERSIGNED, OR HAVE AN INCEPTION DATE PRIOR TO THE CLOSING OF THIS TRANSACTION.

(emphasis in original).

18. The Goodmans also signed an Errors and Omissions Agreement at closing. The Agreement stated as follows:

> I, the undersigned Buyer(s) and/or Seller(s)[,] acknowledge that errors sometimes can occur in closing documents and disbursements. Further, I acknowledge that I intend for all documentation and disbursements for this transaction to be accurate.
>
> Accordingly, I agree to cooperate in initialing, re-executing and redelivering any closing documents and in correcting any disbursements, charges and credits reflected on the settlement statement where such corrective action is deemed necessary or desirable in the discretion of North American Title Company or any lender in this transaction.

19. On March 3, 2021, another mortgage statement was issued and mailed to the Goodmans' address in Kansas. It continued to show an "Outstanding Principal" of $81,387.91 and current escrow balance of $393.17. It showed that no payment was owed as of April 1, 2021.

20. That same day, PHH faxed a notification stating that the loan ending in "7681" had been paid in full as of March 2, 2020. Unfortunately, this loan number was for

6

the loan that Gwen Goodman obtained in 2013 and not the home equity loan that Gwen Goodman obtained in 2020.

21. Based on the mistaken belief that Gwen Goodman's loan had been paid, Doma advised the Goodmans that Gwen Goodman's loan had been paid in full. On March 9, 2021, Doma wired the $100,000.00 it was holding in escrow to the Goodmans. The $100,000.00 that was paid to the Goodmans was in addition to the $99,464.32 the Goodmans received at closing. The Goodmans never advised Doma of their receipt of the March 3, 2021 statement advising that $81,387.91 was still due on the loan or of the prior statements the Goodmans received in January and February 2021.

22. On or about April 4, 2021, another mortgage statement was sent to the Goodmans' address in Kansas. This statement showed that a payment of $1,303.85 was owed as of May 1, 2021, and that the outstanding principal was $81,387.91. The Goodmans did not contact Doma or PHH to inquire about this statement.

23. On or about May 18, 2021, another mortgage statement was sent to the Goodmans' address in Kansas. This statement showed that a payment of $1,303.85 was past due, that $2,638.92 was due as of June 1, 2021, that late charges had been assessed, and that the escrow balance was -$233.74 because NewRez incurred $626.91 for "Lender Placed Hazard Disbursement." Again, the Goodmans did not contact Doma or PHH to inquire about this statement.

24. On June 15, 2021, Shellpoint Loan Servicing, the new servicer for NewRez, sent letters addressed to Gwen Goodman at the Goodmans' address in Kansas and the address of the Property. The letters advised that the loan was in default for the failure to

make payments due on May 1, 2021 and June 1, 2021 and that $2,638.92 needed to be paid to cure the default.

25.   On June 18, 2021, Mr. Goodman, apparently having received Shellpoint's letter, called Shellpoint. The servicer log documents the call as follows:

```
dvaughn                6/18/2021  3:35:03PM                                          1370620393
Inbound call - other   uapt hank called in. said that bw is his DECEASED daughtr . said that the house is sold they got a
                       letter of default. said that we arnt getting  A DIME FROM THEM. they said that they sold it in feb . i
                       adv we need EOE docs. he said he sent that in. i asked when he said feb . i adv i thought u sold the
                       hosue in feb? then he said YOU AINT GETTING NOTHIN FROM ME. i asked why is he calling and
                       he said to tell us again . i sadi ok anything else? and he hung up.
```

26.   Although the Goodmans never contacted Doma to advise of the error, Doma eventually learned that Gwen Goodman's loan had not been paid off, as NewRez was threatening to foreclose. Doma reached out to the Goodmans to ask that the Goodmans discharge their daughter's loan so that the lien on the Property could be released. Despite the Goodmans' sworn statement that they would indemnify Doma and their agreement in the Errors and Omissions Agreement to correct any mistakes made in disbursements, the Goodmans elected to capitalize on Doma's mistaken belief that the loan had been paid in full and keep their windfall.

27.   Indeed, despite having received statements with the loan number and statements that a balance was owed on Gwen Goodman's loan, they claimed that they were ignorant of real estate matters and that Doma had breached its fiduciary duty by mistakenly paying them $100,000.00 that they were never entitled to receive. Despite profiting from Doma's mistake, the Goodmans now claim that they have somehow been damaged by their windfall and threatened to sue Doma for breach of fiduciary duty. In short, the Goodmans

made clear their intent to adhere to Mr. Goodman's warning to the servicer in June of 2021: NewRez is not "getting A DIME FROM THEM."

28. Because the Goodmans refused to make good on their promises at closing, Doma had no choice but to pay off their daughters' loan to prevent the Goodmans' innocent grantee – who paid the Goodmans valuable consideration at closing -- from losing the Property to foreclosure. Doma paid $93,815.07 to discharge Gwen Goodman's loan and obtain a release of lien.

## Causes of Action

**Unjust enrichment**

29. Unjust enrichment has been described as follows:

> "Unjust enrichment" occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain . . . . "Unjust enrichment" characterizes the result o[f] failure to make restitution of benefits received under such circumstances as to give rise to implied or quasi-contract to repay . . . . It has also been said that recovery under unjust enrichment is an equitable right and is not dependent on the existence of a wrong.

*Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App. B San Antonio 2004, pet. denied). "Recovery for unjust enrichment arises from the equitable principle that a person receiving benefits, which were unjust for him to retain, should make restitution." *Nguyen v. Watts,* No. 01-18-00421-CV, 2020 Tex. App. LEXIS 4098, at *52 (Tex. App. – Houston [1st Dist.] May 28, 2020, no pet.). "The right to recover under an unjust enrichment theory **does not depend on the existence of a wrong**. The doctrine is based on the equitable principal that one who receives benefits, **even passively**, which would be unjust to retain ought to make restitution for those benefits." *Walker v. Walker*, No. 14-16-00357-

9

CV, 2017 Tex. App. LEXIS 2719, at *24-25 (Tex. App. – Houston [14th Dist.] 2017, no pet.) (internal citations omitted) (emphasis added); *see also Eun Bok Lee*, 411 S.W.3d at 111; *Stewart Title Guar. Co. v. Mims*, 405 S.W.3d 319, 339 (Tex. App. B Dallas 2013, no pet.); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. – Corpus Christi 2002, pet. denied); *Villareal,* 136 S.W.3d at 270.

30. The Goodmans received a windfall when Doma mistakenly paid them the escrowed funds that should have been used to discharge their daughter's loan. The Goodmans are liable to Doma for unjust enrichment in the amount of $93,815.07

**Breach of Contract**

31. In the Affidavit as to Debts and Liens, the Goodmans swore that they would indemnify Doma for their daughter's home equity loan. In the Errors and Omissions Agreement, the Goodmans agreed to correct any disbursements made by Doma. These agreements constituted contracts with Doma, as Doma agreed to close the conveyance by the Goodmans.

32. The Goodmans have breached their contracts with Doma by refusing to reimburse Doma for its payoff of their daughter's loan. The Goodmans are therefore liable in damages to Doma for $93,815.07.

33. Pursuant to Texas Civil Practice & Remedies Code § 38.001, the Goodmans are liable to Doma for its reasonable and necessary attorneys' fees.

**Fraud/Fraudulent Inducement**

34. In the Affidavit as to Debts and Liens, the Goodmans swore that they would indemnify Doma for their daughter's home equity loan. In the Errors and Omissions Agreement, the Goodmans agreed to correct any disbursements made by Doma.

35. The Goodmans made promises of future performance with no intention of performing it. These representations of future performance were material and were relied upon by Doma. Indeed, in the Affidavit as to Debts and Liens, the Goodmans acknowledged that Doma was "relying upon the representations in this affidavit as being true and correct and that the transaction would not be consummated without this affidavit being executed."

36. Based on the Goodmans' representations, Doma agreed to close the conveyance of the Property. Doma was damaged when the Goodmans failed to discharge the lien on the Property, which forced Doma to pay off their daughter's loan and prevent the Goodmans' grantee from losing the Property to foreclosure. Doma is entitled to recover damages for the Goodman's fraud in the amount of $93,815.07.

WHEREFORE, PREMISES CONSIDERED, Doma respectfully requests that the Goodmans be cited to appear and answer, and that upon final trial, judgment be entered in favor of Doma and against the Goodmans, Doma be awarded $93,815.07 in damages, Doma be awarded prejudgment interest, postjudgment interest, and costs of court, and that Doma have such other and further relief to which it may be entitled to receive.

Respectfully submitted,

**SHACKELFORD, BOWEN,
MCKINLEY & NORTON, LLP**

*/s/ Kelly Conklin*
Kelly Conklin
State Bar No. 00793540
Federal Bar No. 19309
717 Texas Avenue, 27th Floor
Houston, Texas 77002
Phone: (832) 669-6058
Fax: (832) 565-9030
kconklin@shackelford.law

**ATTORNEYS FOR PLAINTIFF**